## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| AMANDA PEARSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Action File No. |
| | ) _____ |
| vs. | ) |
| | ) |
| CAPITAL ONE FINANCIAL | ) |
| CORPORATION | ) |
| Defendant. | ) |
| | ) |
| | ) **JURY TRIAL DEMANDED** |
| | ) |
| _____ | ) |

## <u>COMPLAINT</u>

Plaintiff Amanda Pearson ("Plaintiff" or "Ms. Pearson") hereby asserts her Complaint against the above-captioned Defendant Capital One Financial Corporation, Inc. (hereinafter "employer" or "Defendant") and shows the Court as follows:

### NATURE OF ACTION

1.

This cause of action arises under the Family and Medical Leave Act of 1993, 29 U.S.C. §§2601 et seq. ("FMLA") and 42 U.S.C. § 1981 ("Section 1981").

**JURISDICTION AND VENUE**

2.

Jurisdiction over the claims in this Complaint is conferred pursuant to U.S.C. §§ 1331, 1332, and 1337.

3.

Jurisdiction and venue are proper in this judicial district.

**PARTIES**

4.

Plaintiff Amanda Pearson is an adult citizen and is entitled to bring actions of this nature and type.  Plaintiff was and is a resident of the State of Georgia and the Northern District of Georgia at all times material to Plaintiff's employment relationship with Defendant.

5.

Defendant is a financial services provider with principal offices located at 1680 Capital One Drive, McLean, Virginia 22102.

6.

Defendant conducts business in Atlanta, Georgia.

7.

Defendant is subject to this Court's jurisdiction and may be properly served with process by delivering a copy of the Summons and Complaint upon its registered agent Corporation Service Company, 100 Shockoe Slip Fl 2, Richmond, Virginia, 23219-4100.

8.

At all times relevant to this action, Defendant was a covered employer as defined by the FMLA and Section 1981.

9.

At all times relevant to this action, Defendant was the employer of Plaintiff, as defined by the FMLA and Section 1981.

10.

At all times relevant to this action, Plaintiff was an "employee" of Defendant within the meaning of the FMLA and Section 1981.

**(TITLE VII & SECTION 1981 ALLEGATIONS)**

11.

Defendant hired Ms. Pearson on August 3, 2018 as the Market Vice President, Georgia.

12.

Throughout her employment, Ms. Pearson reported directly to Regional Vice President, Tami Dillingham.

13.

Ms. Pearson had six (6) colleagues who also held the same position as her: Michelle Hendrix, Lauren Dewey, Clint Vice, Keith Cook, Gill Dietz, and Beth Lavery—all of whom also reported to Ms. Dillingham.

14.

Ms. Pearson was the only African American Market Vice President.

15.

All of the other Market Vice Presidents were white.

16.

Initially, Ms. Pearson covered three (3) states while serving as the Market Vice President: Georgia, North Carolina, and South Carolina.

17.

Defendant subsequently promoted Ms. Pearson and expanded her assigned territory, making her the Market Vice President of the entire Southeast.

18.

As the Market Vice President of the entire southeast, Ms. Pearson covered a total of seven (7) states.

19.

Ms. Dillingham and Andrew Sterns, the Head of Sales Commercial Card Sales and Client Development, recognized the difficulty the expansion of Ms. Pearson's assigned territory presented and vocalized the same to Ms. Pearson.

20.

In recognition of the challenges and difficulty the expansion of Ms. Pearson's assigned territory would present for Ms. Pearson, Ms. Dillingham and Mr. Sterns authorized a one-time bonus payment to Ms. Pearson to encourage her to accept the challenged territory.

21.

In expanding Ms. Pearson's assigned territory, Defendant also restructured Ms. Pearson's team.

22.

Ms. Pearson's restructured team was compromised of less experienced and historically poor performing representatives.

23.

Ms. Dillingham and Mr. Sterns acknowledged Ms. Pearson's team presented a challenge because it was compromised of less experienced and historically poor performing representatives.

24.

Despite her best efforts and the improved performance of her new restructured team, Ms. Pearson's team did not meet its sales goals in 2019.

25.

Between December 2019 and April 2020, Ms. Pearson took intervals of time off from work for personal medical reasons.

26.

While some of Ms. Pearson's time off was taken as regular sick leave, Ms. Pearson applied for and was approved for a twelve (12) week medical leave of absence under the FMLA, such that some of her time off was considered FMLA leave.

27.

Defendant designated the time Ms. Pearson took off from January 21, 2020 through April 13, 2020 as approved FMLA leave.

28.

While Ms. Pearson remained on FMLA leave, Defendant reduced Ms. Pearson's team from six (6) representatives to one (1) representative: Sy Wigginton.

29.

While Ms. Pearson remained on FMLA leave, Defendant reduced the seven (7) states Ms. Pearson was assigned to and received sales credit for, down to two (2) states.

30.

On or around April 13, 2020, Ms. Pearson returned to work following her FMLA leave.

31.

When Ms. Pearson returned to work on April 13, 2020, Ms. Dillingham told Ms. Pearson her team would be reassembled and reassigned back to her.

32.

Four (4) days after Ms. Pearson returned to work, Ms. Dillingham told Ms. Pearson that her team would not be reporting back to her.

33.

When Ms. Pearson returned to work following her FMLA leave, Ms. Dillingham told Ms. Pearson that the team of representatives who performed well under Ms. Pearson's leadership, would not be reassembled.

34.

When Ms. Pearson returned to work following her FMLA leave, Ms. Dillingham told Ms. Pearson she would no longer be supervising six (6) sales representatives.

35.

When Ms. Pearson returned to work following her FMLA leave, Defendant only allowed the representatives who were underperforming to remain on Ms. Pearson's team.

36.

Ultimately, Defendant permanently reduced Ms. Pearson's team from six (6) sales representatives to one (1) sales representative: Sy Wigginton.

37.

Ms. Pearson's pre-FMLA team was never restored or reassembled.

38.

Despite drastically reducing Ms. Pearson's team, her team's performance objectives generally remained the same as that of other Market Vice Presidents whose teams had not been reduced.

39.

Additionally, when Ms. Pearson returned to work following her FMLA leave, Defendant reduced the number of states Ms. Pearson was assigned from seven (7) states to only two (2) states.

40.

As a result of Defendant's decision to reduce Ms. Pearson's assigned territory when she returned to work, Ms. Pearson was no longer eligible to receive sales credit for seven (7) states.

41.

As a result of Defendant's decision to reduce Ms. Pearson's assigned territory when she returned to work, Ms. Pearson was limited to only receiving sales credit for two (2) states.

42.

Defendant reassigned five (5) of Ms. Pearson's assigned states to other Market Vice Presidents.

43.

Ms. Pearson's assigned territories were never restored to the seven (7) states she was responsible for prior to taking FMLA leave.

44.

On May 27, 2020, Ms. Pearson filed an internal complaint with Defendant alleging FMLA retaliation.

45.

Ms. Pearson's internal complaint concerned the fact that her team and assigned territories were not restored when she returned to work following her FMLA leave.

46.

The actions Ms. Pearson complained of in her internal complaint, included, but were not limited to, a negative year-end review, the reassignment of her top performing sales representatives, the reduction of her territory to two states, placement on a "Coaching Plan," and the loss of half of her bonus and annual raise for 2019 and 2020.

47.

Defendant did not interview Ms. Pearson in response to her internal complaint or otherwise follow up with her about her concerns.

48.

Defendant never reassembled Ms. Pearson's team.

49.

Defendant never reassigned Ms. Pearson's original territories back to her.

50.

In October 2020, Ms. Dillingham placed Ms. Pearson on an extended Coaching Plan.

51.

Ms. Dillingham extended Ms. Pearson's Coaching Plan, even though Ms. Pearson had already satisfied the requirements of the original Coaching Plan.

52.

Under the extended Coaching Plan, Ms. Dillingham required Ms. Pearson to meet and perform the same performance metrics that were normally given to the sales representatives she managed.

53.

On September 22, 2021, Ms. Pearson was placed on a Performance Improvement Plan ("PIP").

54.

Defendant placed Ms. Pearson on a PIP based on her sales representative's unmet performance metrics.

55.

When Ms. Pearson was placed on the PIP, there were other Market Vice Presidents with sales representatives on their teams who were not meeting their performance metrics.

56.

At the time, Ms. Pearson was the only Market Vice President who was placed on a PIP.

57.

On November 30, 2021, Defendant terminated Ms. Pearson's employment effective December 1, 2021.

58.

Defendant told Ms. Pearson her employment was ending due to alleged performance.

59.

Defendant told Ms. Pearson that she was being separated from employment based on the performance deficiencies of her subordinate, Sy Wigginton.

60.

When Defendant fired Ms. Pearson, there were other Market Vice Presidents with subordinates on their team whose performance was deficient for the same or similar reasons as Sy Wigginton's performance.

61.

Unlike Ms. Pearson, Defendant permitted the other Market Vice Presidents to remain employed.

62.

Ms. Pearson was the only Market Vice President Defendant fired for reasons allegedly related to performance.

## COUNT ONE: FMLA INTERFERENCE

The allegations in the preceding paragraphs are incorporated by reference as if set forth herein.

63.

At all times relevant, Defendant has employed 50 or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year.

64.

Defendant is a covered employer and is subject to the provisions of the FMLA.

65.

At all times relevant to this action, Plaintiff worked remotely from the State of Georgia but her assigned worksite was Defendant's headquarters located at 1680 Capital One Drive McLean, Virginia 22102.

66.

At all times relevant to this action, Plaintiff worked for Defendant for at least twelve months; worked at least 1,250 hours during the twelve-month period prior to the start of her FMLA leave; and was employed at a worksite where there are at least fifty or more employees within a seventy-five mile radius of Plaintiff's assigned worksite.

67.

At all times relevant to this action, Plaintiff had a serious health condition as defined under the FMLA.

68.

At all times relevant to this action, Plaintiff was an "eligible employee" as defined under the FMLA.

69.

At all times relevant to this action, Defendant and its agents knew of Plaintiff's serious health condition and that Plaintiff's absences from work were due to her serious health condition.

70.

At the end of her FMLA leave period, Plaintiff was entitled to return to her position or its substantial equivalent.

71.

At the end of her FMLA leave period, Defendant returned Plaintiff to a position that entailed lesser and different duties, responsibilities, authority, status, skill, and effort.

72.

At the end of her FMLA leave period, Defendant did not restore Plaintiff to her position or its equivalent.

73.

Defendant interfered with Plaintiff's FMLA rights by failing to restore Plaintiff to her position or its equivalent at the end of her FMLA leave period.

74.

Defendant interfered with Plaintiff's FMLA rights by terminating her employment.

75.

Defendant's conduct, as alleged herein, was undertaken with deliberate indifference to Plaintiff's federally protected rights under the FMLA.

76.

As a direct and proximate result of Defendant's unlawful actions and failures to act, Plaintiff has suffered economic damages, for which she is entitled to recover from Defendant.

## COUNT TWO: FMLA RETALIATION

The allegations in the preceding paragraphs are incorporated by reference as if set forth herein.

77.

Defendant's actions demonstrate violations of the FMLA's retaliation provision.

78.

The actions complained of in this action were done because of Plaintiff's exercise of her rights under the FMLA.

79.

The actions complained of this action were in close proximity to Plaintiff's protected activity as defined under the FMLA.

80.

Defendant knew or should have known that the means utilized to punish Plaintiff for using her FMLA leave were forbidden by law.

81.

Defendant's conduct, as alleged herein, was undertaken with deliberate indifference to Plaintiff's federally protected rights under the FMLA.

82.

As a direct and proximate result of Defendant's unlawful actions and failures to act, Plaintiff has suffered economic damages, for which she is entitled to recover from Defendant.

83.

The reasons given by Defendant for the adverse employment action are pretextual and designed to hide Defendant's retaliatory motive.

84.

Defendant performed the above actions willfully, wantonly, intentionally, with malice and/or in reckless disregard of Plaintiff's federally-protected rights.

85.

Plaintiff is entitled to an award of backpay and benefits, front pay, compensatory damages, punitive damages, attorney's fees, and all other appropriate damages, remedies, and other relief available under Title VII and all federal statutes providing remedies for violations of Title VII.

86.

All conditions precedent to bringing this Count have been completed, performed, and/or waived.

## COUNT THREE: RACE DISCRIMINATION IN VIOLATION OF SECTION 1981

The allegations in the preceding paragraphs are incorporated by reference as if set forth herein.

87.

In placing Plaintiff on a PIP and terminating her employment, Defendant knowingly and intentionally discriminated against Plaintiff on the basis of her protected race.

88.

The reasons given by Defendant for the adverse employment actions are pretextual and designed to hide Defendant's discriminatory motives.

89.

Defendant's actions constitute unlawful race discrimination in violation of Section 1981.

90.

Defendant performed the above actions willfully, wantonly, intentionally, with malice and/or in reckless disregard of Plaintiff's federally-protected rights.

91.

Plaintiff is entitled to an award of backpay and benefits, front pay, compensatory damages, punitive damages, attorney's fees, and all other appropriate damages, remedies, and other relief available under Section 1981 and all federal statutes providing remedies for violations of Section 1981.

92.

All conditions precedent to bringing this Count have been completed, performed, and/or waived.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that this Court:

1. Grant to Plaintiff a jury trial on all issues so triable;

2. Grant declaratory judgment that Plaintiff's rights under the FMLA and Section 1981 have been violated;

3. Grant Plaintiff a permanent injunction prohibiting Defendant from engaging in such unlawful conduct in the future;

4. Award compensatory damages in an amount reasonable and commensurate with the economic losses that she has suffered as a result of Defendant's discrimination and retaliation and the pain, emotional distress, and physical harms imposed upon her by Defendant's intentionally discriminatory acts, in an amount reasonable and commensurate with the harm done and calculated to be a sufficient deterrent to such conduct in the future, and all other sums and relief to which Plaintiff is entitled under the law;

5. Award appropriate back pay, reinstatement or front pay in lieu of reinstatement, reimbursement for lost salary, and compensation for other damages suffered by Plaintiff by reason of Defendant's violations of the FMLA and Section 1981, in an amount to be shown at trial;

6. Award liquidated damages under the FMLA, in the amount of any wages, salary, employment benefits, or other compensation denied or lost to Plaintiff by reason of Defendant's violation of the FMLA and interest on the amount described above calculated at the prevailing rate;

7. Award pre-judgment and post-judgment interest calculated at the prevailing rate;

8.  Award nominal damages;

9.  Award punitive damages in an amount reasonable and commensurate with the harm done and calculated to be sufficient to deter such conduct in the future;

10. Award Plaintiff's attorneys' fees, costs, and other expenses of litigation, including but not limited to reasonable expert witness fees and other costs of the action; and

11. Award Plaintiff such additional relief as the Court deems proper and just.

This 29th day of March, 2022.

SHELTON LAW PRACTICE, LLC

By:    /s/    Cherri L. Shelton
       Georgia Bar No. 27693

Shelton Law Practice, LLC
400 Galleria Parkway, Suite 1500
Atlanta, GA 30339
Phone: (404) 865-3771
Facsimile: (678) 882-7499
cshelton@sheltonlawpractice.com

**ATTORNEY FOR PLAINTIFF**